Good morning, counsel. When your case is called, you may have been in the courtroom before, so you heard me say this. Please approach the podium, tell us your name and which party you represent. Each side gets 15 minutes to speak. The appellant is advised to save a few minutes for rebuttal. We're going to try to hold you to your time because we do have more cases than usual today. Whenever you're ready, counsel. Good morning, Your Honors. Scott Main on behalf of Glenn Brown. Good morning, Your Honors. I'm Assistant State's Attorney John Nowak on behalf of the people. Thank you. Good morning, Your Honors. May it please the Court. Remember, say your name again because this is a recording device and it records at the beginning of each case. My name is Scott Main and I'm appearing on behalf of Glenn Brown. I would like to reserve a few minutes for rebuttal. If you read anything about appellate advocacy, people are always talking about trying to find a theme for your case, trying to tell a story. I've never worked on a case where that theme presented itself so plainly, so clearly on just a few lines of transcript. On pages DD11 through 12, right before a jury was selected, and after Mr. Brown had made a number of interruptions and outbursts, the judge calls the attorneys up to the bench, expresses his concerns that Mr. Brown is going to prejudice himself. Defense counsel agrees, but resigns herself with, well, forensic clinical services says he's fit. The judge asks if they tried to resolve the case. They say that they have, but the defendant wants a trial. Then both the defense counsel and the state say, if I saw another way, and the matter proceeded to trial. I submit there was another way. This case is about a failure of responsibility. This appeal is about not simply shrugging your shoulders. At various stages of this case, each party failed. I would like to focus my arguments on the second, third, and fourth in the brief, but obviously I'd be happy to answer any questions you guys have about the case overall. One thing I did say earlier, and I should reiterate, we have carefully read the briefs, we've read the record, so it behooves you to get to your most important issue first, so that if you run out of time, you will not run out of having addressed that issue. Absolutely. There were at least seven fitness evaluations that were ordered during the course of this proceeding. He was found unfit, he was found restored, but that fitness remained in question, and it remained in question over a year later when this case went to trial. The court did not protect Mr. Brown's fundamental right to due process by following through on its ongoing duty to ensure the fitness of the party in front of him. The state is simply wrong in claiming that the underlying finding of fitness was addressed. What else should the court have done, Mr. Maine? When the judge, right before trial, is aware of the fact that he is going to prejudice himself, that requires an evaluation, at a minimum. The next thing that happens is when Mr. Brown testifies, when he's asked to spell his name and he gives the answer, you have reached Dr. Brown and Rawls and Associates, have a sidebar. Call the parties up. So there were six DCXs before sentencing, right? Six. Six. What's a trial court supposed to do when the sixth one comes back and says the defendant is fit for trial? What is the trial court supposed to do? Send it back again for another fitness hearing? The duty is ongoing. The case law is clear. But, again, I mean there's a difference between somebody who's fit for trial versus someone who makes outbursts, is there not? Yes. And what was the trial court's history with this case? How so, Your Honor? Did he only try it or was he there for various motions that came up? He was present during the ongoing proceedings. He was aware of the fact of what these outbursts would do. Right. And, obviously, what we're talking about is not just when we're asking the question of whether or not someone is fit for trial. What we're also asking is whether or not they're able to assist in their defense. All right. And that's the critical problem here because we have someone that the moment that he speaks from the witness stand, he's not able to assist in his defense when he's giving nonsensical answers. And these answers are things that are tied to the underlying cause of mental illness. Was every answer he gave nonsensical? Not every answer, no, Your Honor. Right. So some were and some were not. Correct. Is there a percentage of those that we could agree to? I don't think we need to talk about percentages. I think we have to talk about whether or not he is able to ably assist in his defense. And, frankly, one of the things that struck me as I was thinking about this case for today is, you know, the State saying that his answers were cogent and that he was able to present an alibi defense. But that prosecutor, the very first question he asked on cross-examination, he knew was to hit back on this thing that reveals that this person is not competent, that there are some competent being, you know, I'm not trying to use a term of art here. But the very first question on cross was, Mr. Brown, would you introduce yourself again? Because he wanted to get in front of the jury this statement, this you've reached Dr. Brown and Rawls and Associates and have them talk about this case. Was an objection asked and answered? I mean, what relevance does that have? It has to the court's duty. Again, this is the ongoing duty of the court. Was there an objection from defense counsel on that question? There was not because defense counsel was advocating on his client's interest that he was fit and to proceed with trial. This was the defense counsel shrugging his shoulders. That's what we saw before trial. That's what we saw after trial. But isn't it true that at the restoration hearing, the court didn't just adopt the psychiatrist's conclusion of fitness, but instead heard testimony and made his own, came to his own conclusion based on that testimony? He heard testimony. That testimony was not subject to any cross-examination. Basically, again, while being different from simply accepting a stipulation, obviously the court was able to sit there and listen to the questions asked by the prosecutor. But those answers were not challenged in any way. They were obviously the defense was proceeding that he was fit and wanted to proceed. So it was not subject to any, you know, like you're able to, I'm not saying that one can't make a credibility determination based solely on contested or unchallenged testimony. But there was nothing to sort of reveal any further information about what this doctor's conclusions were about Mr. Brown. Just speaking hypothetically, what else should, I know what you think the defense counsel should have done. What else should the judge have done, if anything? I think the judge many times did exactly what the judge should do. Because obviously four months after this restoration hearing, the judge ordered another fitness evaluation. And that's great. That's what should happen. But then we can't just get to the point where we stop. And particularly when you know that we're about to call a jury, we're about to present live testimony, and you still have these questions. You know right before trial that he's going to prejudice himself. That's the problem here. Counsel, can we focus specifically on the Crankle issue for a few minutes? Sure. And that's the other, obviously the other major thing that I think sort of these two issues interplay. They go hand in hand. Yes. So the first outburst was made, that concerns Crankle, was on April 2nd. Was it not, 2013, when it was in the context of the BCX trial court order. Is that correct? Well, Your Honors, obviously there were a number of times before in pre-trial proceedings in which the defendant was asking for transcripts. He was asking for, you know, there were various things that the court would tell him to be quiet.  I'm sorry. Specifically the issue of Crankle. So going to the Crankle issue. That did come up on April 2nd where he expressed to the judge, I have, you know, I have problems with my attorney not listening to me. The judge simply said noted. Again, that was in context of the whole BCX. That was in context of the BCX issue. Right. And then later on in that same hearing the defendant said I'm going to be filing a motion. That motion was then filed. It was received by the clerk on the 3rd, I believe, and then filed on the 15th. Yeah. This gets very interesting to me, by the way, this whole scenario. But let me ask you this. Based on bald allegations, I mean, isn't there a case where it says the court doesn't have a duty to investigate? Sure, if it's a bald allegation. Right. But we have a multi-page motion. I get it. Okay. We have a motion that has specific claims. It has details about what he asked his attorney to do and what his attorney told him to do. On April 2nd? On April 2nd. I believe that would be the type of scenario in which simply saying I have a disagreement with my attorney, that may not be enough. That may not rise to a level. Okay. All right. So let's get on to the next one, then, the written motion. Correct. Okay. So he filed that, I believe, on the 3rd of April? 3rd of April. And it was received on the 3rd, filed on the 15th, clearly a part of the court. So received by whom? Clerk of the court. On the 3rd? 3rd. And file stamped by whom on the next day? Again, on the 15th, the clerk. By the clerk? Yes. So the clerk stamped it twice? Yes. So do we know that that motion got into the court file? It was a part of the appellate court record. I'm just asking you, do you know at the time of that motion being, I don't know, it was never called up for hearing, but when the next time the court was convened, was that motion in front of the court? The only other piece of evidence that I think we could point to, I believe, would be the half sheet indicating that it was also on the clerk's notation. I will double check that. Yeah. Was there notice to the state's attorney's office on that motion? I'm just trying to figure out the trial court. What position was the trial court in? All of a sudden he's accused of not giving this man a hearing on his motion. How did he even know the motion was even filed? Because it was in the court. Your Honor. And there's a lot of motions filed that are in court records that I never ruled on, I'm telling you, because they were never motioned up for hearing. That's my point. This is a pro se motion. People v. Moore is abundantly clear on this question. Well, abundantly clear that any time a pro se person makes a pro se motion, it has to be heard or the court doesn't advise of it. What else is a pro se litigant to do? And this was posted. Judge, by the way, you never heard, even at sentencing, he didn't bring it up, did he? At sentencing, well, when he said he was filing a motion on the third, the judge told him to be quiet. He didn't say you can't file it. It's like do whatever you want, right? Sure, do whatever you want. That's not what the court's duty is to do. Well, but again, a lot of people say I'm going to file motions and they never do. But he did. Okay. So how did the court know it was filed? How else was he supposed to get this in front of the judge? Judge, before sentencing, I filed a motion, a crankle hearing. At the sentencing hearing, Your Honor, this judge was threatening to remove him from the courtroom. But he never brought it up at that time. When you're facing that level of hostility from the judge, when you're facing that level of aggression back and you've done what you need to do, I've raised and I've raised contentions when these things appear in the PSI. This isn't even that. This is much more than that. This is a written motion alleging. I understand that. It's a very serious thing. Right. It's denied, but the court didn't even know it was present is what my point is. I think it's – How do you know that? Because of the record we have in front of us. And how do Your Honors know that what we have is a record that requires – Oh, no, it was filed. No question about it. It's part of the file. But did the court become aware of it is my question. You know, we have files like this. I'm not looking for every motion. And he never brought up – and he was in court on May 7th and May 31st, and there was never any comment from him about his crankle motion. Correct? Correct. There was no specific mention to the crankle motion. So it's not like the court denied his request for a crankle hearing. He's not requesting a crankle hearing. He's asking the court to inquire. Inquire, right. Again, I mean, how would you even think the court knew about it? Because it's been filed by his clerk. Well, again, is that sufficient? Yes. How could it not be? I don't know what else we ask. But these are filed all the time. Correct. And ask a question. That's all we ask. We're not saying you need to appoint counsel. We're just saying these claims need to be addressed. We have someone that obviously has been having problems with his attorney throughout the course of these proceedings, has attempted to bring it to the court, has been told repeatedly, you have an attorney, everything has to go through your attorney. You rely on People v. Moore. Can you compare this case and speak to that for me for a moment? People v. Moore basically was the Illinois Supreme Court that – and I don't have the facts in front of me on that case. It's become the standard by which when Crankle first came down, Crankle was talking about the need for a hearing, the need for appointment of new counsel. It was a recognition that this is not something that needs to happen in every case. It was a recognition that what we need is for there to be some indication on the record, some inquiry. It can be the court just asking the attorney one question. It could be allowing the defendant to speak to what that claim would be. There just needs to be something on the record indicating that these claims are being addressed. That is wholly absent from this case. And I think the reason why it's wholly absent from this case is because of who this defendant was. Practically speaking, Mr. Main, following up on Justice Connors' question, other than trolling through the file to see all the motions that were filed, how would the judge know that this motion was pending? I don't. I mean, beyond simply filing a motion, I'm a pro se, unskilled, uneducated individual with obviously an ongoing series of mental illness. I've put a motion. I've told the court I'm filing a motion, and then I did file a motion. I don't know what else we can expect of a pro se litigant, let alone a pro se litigant with, I think, an ongoing question about his fitness, which notably was happening at that time of the April 2nd hearing when they were still having a question based on some of the things that were being said in the PSI about this person still indicating he's been the comptroller of the city of Chicago since 1981, that there are lingering questions about this bill. I mean, to be fit for trial, not whether or not he had complaints about his attorney. Correct. Those two things do not have – but they do have to do in terms of the timing and in terms of when he's making these claims. And he's told the court that he's filing a motion. The court tells him to be quiet. He files the motion. I honestly – when you're putting yourself in front of a judge and you're about to be sentenced by that judge, I think that there is – I can't think of what more I would ask this guy to do in order to make sure that that claim is being addressed. He does tell the court at the very end that he plans on further challenging these matters and letting them know that things remain unresolved in his mind. But, again, if he was fit for trial, then you have to take these pro se claims seriously. If he was not, if you're just going to simply disregard these post-trade claims, then I think we have some real questions about whether or not he was able to ably assist in his defense. These two issues interplay, and they interrelate. They need to be red-headed hand-in-hand, because I honestly don't see how you can have one and the other, how you can say that this guy was clearly able to understand what was going on and assist his attorney, but then when – if he has a problem with his attorney's behavior, you're not going to pay any attention to what that claim was. This case is about the respect of the individual, and I don't see that respect happening. We asked this court to reverse his conviction because nothing about this case rises to the level of the felony version of disorderly conduct. But at a minimum, we think the fitness issue does still need to be resolved. And if this court doesn't agree on the fitness question, we think this matter, at a minimum, there is a motion that's been filed that needs to be addressed to find out just what his pro se claims were about his attorney's assistance. Thank you, Your Honors. Thank you. May it please the Court. I'm Assistant State's Attorney John Nowak on behalf of the people of the State of Illinois. Your Honors, there was great respect for this defendant's rights, and the trial court did not abuse its discretion in finding this defendant fit to stand trial. The trial court ordered several examinations of the defendant. The first one, in September 23, 2011, came back that the defendant was not fit for trial and that he could be restored to fitness within a year if he followed a medication regimen. The trial court ordered another BCX, another clinical examination, in January. There, Dr. Ned Carney, on January 5, 2012, examined the defendant, wrote a report, and found the defendant fit to stand trial while following his medication regimen. The court held a hearing. Mr. Nowak, how do you refute the defendant's argument that the three outbursts that he made prior to January 5, the jury selection and the unusual comments, for lack of a better word, during his trial testimony, created a bona fide doubt that he was still unfit to stand trial despite the multiple BCXs that he had had? Those did not raise any sort of bona fide doubt because those outbursts, those so-called outbursts, those three outbursts before the jury was selected, before the jury was present, they were these. These were the three. He made a motion for transcripts. He tried to request something related to the people dismissing account, and he clarified his request for daily transcripts. Those were the so-called outbursts before trial. And as far as his so-called nonsensical answers, there was one, and that was his introduction when he was asked what his theme was. After that, every single answer was appropriate. There was no bona fide doubt. Mr. Nowak can kind of gloss over that. In the course of a trial, when a witness is asked their name, it's usual if the witness is paying attention and not impaired in any way that he'll state his name. He didn't do that. I mean, what he stated was something very unusual. Why is that not a signal that something was not quite as it should be here? We know because reading the rest of his testimony, both on direct and cross, there were no outbursts. There was no unusual statements by the defendant. In fact, he put forth, he testified on direct and cross to his alibi defense that he wasn't at the post office that day when he threatened to blow it up and kill everyone inside. He said he was at the Fifth Third Bank nearby. He did not make any other nonsensical answers other than that one. That was the introduction. At most, that might have sympathized him with the jury. Is there a specific number of nonsensical answers that's necessary before the court can be alerted to the fact that maybe this defendant isn't quite hitting on all cylinders? Is there a specific number? You said it was just one. But if the one is nonsensical enough, is that enough? You'd have to look. Really, it needs to be taken in context and look at everything else that occurred in this case, both before trial and during trial, because there we know this defendant, the trial court was so absolutely diligent in protecting this defendant's rights and having respect for this defendant and making sure that he was fit for trial. This defendant, the trial court ordered six clinical examinations, and that first one that came back as him being fit was in January 5th. The trial court ordered another one in June, had another one in November. This defendant, in each one of those, beginning with January 5th, every subsequent clinical examination came back that he is fit, he is adhering to his medication regimen, and that's it. The fact that he makes one nonsensical answer, that should not per se require a reversal in finding him not fit or a per se rule that the trial court must stop the trial and again order a seventh pretrial clinical examination. One, read in context, this defendant was fit to stand trial. And the trial court did not abuse his discretion. Again, that's the standard of review here. Did this trial court make such an unreasonable decision after every single one of these clinical exams and listening to his testimony during trial? Was that so unreasonable that no trial court could have found him fit to stand trial? No, the trial court was right and did not abuse his discretion here. And again, here, the defendant talks about how there was no examination by defense counsel. Let's move on to the clinical issue. Yes, Your Honor. What about the fact that the defendant did tell the judge that he thought his counsel was ineffective, the counsel never met with him, never talked with him, and was trying to direct the trial in a way in which he did not wish the case to go and all of that. And the judge said that he was making a motion for new counsel, and the judge said so noted and then nothing else. That's not what the defendant said when he made that oral statement on April 2nd, Your Honors. Any of his allegations about that went into any sort of anything about his counsel was in that written motion. On April 2nd, he said he was unhappy with his counsel. And here's how it read, just in brief. Defense counsel, this is post-trial. Defense counsel, I am in receipt of a copy of Mr. Brown's pre-sentence investigation. I have read it. It's my position at this time he needs to be reevaluated by forensic clinical services. Defendant, I object to that, Your Honor, and I would ask for another counsel to take on where Nadine has fallen short in her duties. The court, so noted. Defense counsel, and so I have prepared an order for Mr. Brown to be reevaluated, and I'm asking Your Honor to sign that, and we take a date. Let me ask you another question that's related to that. Presumably, his defense counsel knew that he had filed a motion. Should she have brought it to the Court's attention? I'm not sure we can make that presumption, Your Honors. I really don't believe we can. Well, let's assume for the sake of argument that she knew. Should she have brought it to the Court's attention if she knew? If there was something in the record to indicate the defense counsel knew. Counsel, I'm asking you hypothetically. If she knew that such a motion had been filed, does she have an obligation to bring it to the Court's attention? That's a yes or no question. No, I am not aware of any appellate court case or any Illinois Supreme Court case that says that if a defense counsel knows. So you have a pro se litigant who has a history of mental problems, mental illnesses, who says, my counsel isn't paying any attention to me. I think my counsel is ineffective. I filed a motion. The judge may not know about the motion. The counsel knows about it, and she has no obligation to tell the judge that such a motion has been filed. Is that your position? Let me backtrack, Your Honors. No, just answer my question, Counsel. That's all I'm asking. Without the benefit of case law on this, I'm just speculating, Your Honors. But if you want an answer to it, yes, I believe that if there was something in the record that says that she knew about it, then certainly it would be professional of her or him to bring that to the Court's attention. We do not have that in this record, Your Honor. There's no question this motion based on ineffective counsel was, in fact, filed. It was marked as filed. It's part of the record. It's before us in the record as having been filed. Correct. It is file stamped on April 15th. That in and of itself, doesn't that give us the right to explore the propriety of the Court's actions thereafter? Specifically, when such a motion is filed, isn't the trial court required to conduct a crankle hearing? If the trial court is aware of it. And looking at the docket sheet here, Your Honors, it is not listed on the hatch. On what cases can you say only if the court is aware? Two cases, Your Honors. An Illinois Supreme Court case called People v. Red and an appellate court case called People v. Newman. In People v. Red, the Illinois Supreme Court said this in 1996. Regarding a pro se defense, a move-up has the responsibility to obtain a ruling from the court on his motion to avoid waiver on appeal. And here's what this court held in Newman. Unless a motion is brought to the attention of the court and the court is requested to rule on it, the motion is not effectively made. A motion is an application to the court, which must be brought to the court's attention. Merely filing the motion with the clerk of the court does not constitute a sufficient application. This rule is no different if the motion is filed pro se. That is at 211 Ill. F. 3rd at 1098. So he's forfeited. He has forfeited it because it was not brought to the court's attention. And this defendant certainly is not shy about making oral motions before the trial court. He had an opportunity on two hearings that was marked filed on April 15th. Can you speak to that issue with respect to People v. Moore, which is later than the case you just signed? Yes, Your Honors. In Moore, that was brought orally before the court. The court was aware that the defendant was making a motion for ineffective assistance to counsel. The trial court was there and aware that that motion had been made. The defendant made the court aware. The defendant in this case orally brought it to the court's attention as well. If I understand your argument, most of your argument centered around the fact that the written motion was never brought to the court's attention. I don't think there's any dispute that orally the court was made aware that the defendant was unhappy with the assistance rendered by his counsel. He made that aware, made the court aware of that on April 2nd. Again, that was not actually an actual claim of ineffectiveness. We can see by reading it here that that was in response to his objecting to a seventh clinical evaluation. In fact, defense counsel here on appeal, just before Your Honors, seems to concede that that wasn't enough, that it was just a bald, at most, it was a bald allegation of ineffectiveness. But we know by reading the context again. Counsel, I'm sure your opponent would take issue that he conceded that point, but he can speak for himself. Yes, he may. But he did, in response to a question from Justice Connors of whether you have to do more than just make a bald allegation of ineffectiveness, he seemed to move away from that. He seemed to step away from that. And that's reasonable, because here when you read it, this was not a claim, that oral claim. It was just saying, look, I don't want to go through a seventh clinical examination. You have examined me six times before and found me fit five times. I don't want to go through it. I think my question went to the fact that orally it was brought to the court's attention that he was unhappy with the representation of his counsel. That was similar to what was done in Moore, was it not? But it has to be read in context. It has to be read in context. And in here, in Moore, when you read it in context, he was making a claim of ineffective assistance counsel. Here, I object to that, Your Honor, and I would, in response to her request for a second, another evaluation. And then after the court says so noted, and defense counsel says then, so the record can be clear. My request, and I understand that Mr. Brown is in objection, that it's based on, well, defendant. I will object to the court. I note your continuing objection. Please be quiet. He knows what the defendant is doing here. He's objecting to going through another exam. He's not making a claim of ineffective assistance counsel, Your Honors. And that's what differentiates this case from Moore. Your Honors, this defendant was fit for stand trial. The trial court did not abuse his discretion in finding that after every single one of these exams. And there was no crankle violation here, Your Honor. Defendant received a fair trial. His rights were protected, and he had great respect for this defendant to make sure he was fit and had a fair trial, and he did, Your Honors. This trial court, the jury properly found him guilty of felony disorderly conduct for threatening to blow up a post office, and we ask for these reasons and those in our brief that this court affirm his conviction. Thank you, counsel. Mr. Main, brief rebuttal, please. A couple of quick points. Obviously, Justice Cunningham, you're correct in the citation of the case of People v. Newman is an apposite because that predated the Moore decision, and it's no longer good law because Moore is obviously from the old nursing court that came down subsequent to that Newman decision. The People v. Red decision, which counsel stated, had specific reasons. Specifically to do with the duties of an attorney representing someone or a pro se defendant representing themselves at trial, that they have a duty to make sure that a court obtains a ruling when you're acting as the attorney. Moore and Crankle are a completely different animal, and Moore and Crankle have to do with pro se claims of ineffective citizens of counsel. They have to do with the conflict that's existing, that's building up between he and his attorney, and it's separate and apart from whatever duty may be on someone representing themselves as the attorney in front of the court and their duties to obtain a ruling. So Red is an apposite. Moore is the controlling case in this question. Let me ask you the same question I asked your opponent. If his counsel knew that this motion had been filed, did she have an obligation to bring it to the court's attention? Yes, Your Honor. But frankly, Moore speaks to something else, something more. It speaks to the fact that the duty is on the judge, and this was a judge that was told, I'm filing a motion. The judge again tells him to shut up. But he files the motion. What else are we asking a pro se individual who's having a problem with his attorney able to do? And then at the sentencing hearing is repeatedly told to be quiet, to stop interrupting, or you'll be removed from the proceedings. Again, I think this individual has done everything in his power to make the court aware of the issue that he's having with his attorney. At a bare minimum, this matter needs to be remanded for consideration of that motion. But, Your Honors, when looking at this decision, and it's not simply, and to briefly return to the fitness question, it wasn't simply one answer. He gave that answer, and then he was raising his hand. His attorney told him, put your hand down. And he continued down, talking about being a veterinarian, talking about his dog, when on cross-examination the state, again, asks him to elicit the same damaging testimony. And then his testimony also veers off into a question of one of his family members being hogtied and beaten by the Harvey police. These are not answers that were directly responsive to the question at issue. These were answers that leave a real and lingering doubt as to this individual's fitness and ability to assist in his defense. Your Honors, we ask that you reverse this conviction, again, pursuant to the First and Fourth Claims. Pursuant to the second, we ask you to reverse the remand for a new trial. And pursuant to the third, we ask you to send it back for an inquiry into his pro se motion regarding counsel's assistance. Thank you, Mr. Main. Thank you, Mr. Nowak, for argument on this case. This matter will be taken under advisement.